**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **GREGORY TURNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:20-cv-02025-SHL-atc** |
| | ) | |
| **NATIONAL ASSOCIATION OF LETTER** | ) | |
| **CARRIERS BRANCH NO. 27,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant National Association of Letter Carriers Branch No. 27's

("the Branch") Motion for Summary Judgment, filed on June 1, 2021.[1]  (ECF Nos. 52–56.)  *Pro*

*se* Plaintiff Gregory Turner filed his Response to the Motion on June 24, 2021.  (ECF No. 59.)

The Branch filed its Reply in Support of the Motion on July 9, 2021.[2]  (ECF Nos. 60–62.)  For

the following reasons, this Court recommends that the Motion be granted in its entirety.

## PROPOSED FINDINGS OF FACT

As a threshold matter, the Court must address which facts are undisputed for purposes of

ruling on the Motion.  Contemporaneous with the Motion and the accompanying memorandum

---

[1] This case has been referred to the United States Magistrate Judge for management and for all
pretrial matters for determination and/or report and recommendation as appropriate.  (Admin.
Order 2013-05, Apr. 29, 2013.)

[2] The Branch initially filed a Reply on July 9, 2021, that incorrectly indicated that Turner failed
to file his Response to the Motion for Summary Judgment.  (ECF No. 60.)  Later that day,
Defendant filed a "corrected" Reply that removed that contention but was otherwise
substantively the same.  (ECF No. 62.)  The Court will disregard the initial Reply and will
instead consider the "corrected" Reply (ECF No. 62-1).

(ECF No. 53), the Branch filed a statement of thirty-five undisputed material facts ("Defendant's Facts") (ECF No. 54). Defendant's Facts are supported by the Declaration of John Walker, President of the Branch (ECF No. 55), which includes seventeen exhibits, and the Declaration of Kate M. Swearengen, counsel for Defendant (ECF No. 56), which includes ten exhibits.

Turner responded to Defendant's Facts (ECF No. 59) and submitted a statement of eleven "additional facts" (ECF No. 59-2), supported by eight exhibits. In his response to Defendant's Facts, Turner agrees with twenty-four of Defendant's Facts for purposes of summary judgment and disputes the other eleven.[3] Turner's "additional facts" contain both new factual contentions and purport to provide factual contravention to the eleven contested Defendant's Facts. As such, the two documents (ECF No. 59 and 59-2) must be read together to determine Turner's basis for disputing eleven of Defendant's Facts.

In any event, Turner has failed to properly dispute any of Defendant's Facts. For some of the disputed facts, Turner offers no citations to the record to support his contentions or only offers citations to support a portion of his opposition to Defendant's Facts. (ECF No. 59-2 ¶¶ 8, 10, 14, 23, 27, and 29.) Such responses are insufficient under Local Rule 56.1(b), which requires that "[e]ach disputed fact must be supported by specific citation to the record." Local Rule 56.1(d) further provides:

> Failure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.

*See also* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . .

---

[3] Turner agrees with Defendant's Facts Nos. 1, 2, 3, 6, 7, 9, 11, 12, 13, 15, 16, 17, 18, 20, 21, 22, 25, 26, 28, 30, 32, 33, 34, and 35. Turner disputes Defendant's Facts Nos. 4, 5, 8, 10, 14, 19, 23, 24, 27, 29, and 31.

consider the fact undisputed for purposes of the motion . . . .").  The facts Turner disputes but offers insufficient citations for are therefore deemed undisputed.  *See Sanders v. Baptist Mem'l Hosp.*, No. 14-CV-2414-SHL-tmp, 2015 WL 5797607, at *1 (W.D. Tenn. Aug. 19, 2015), *report and recommendation adopted*, 2015 WL 5797618 (W.D. Tenn. Oct. 1, 2015), *aff'd*, 15-6136 (6th Cir. Apr. 11, 2016) (collecting cases in which courts in this district deemed as undisputed facts that plaintiffs failed to respond to consistent with Local Rule 56.1(b)).

In other instances, Turner supports his statements with adequate citations to the record, but his contentions merely reflect his subjective and unsworn commentary on a particular issue, provide tangential information that does not contradict Defendant's Facts, or both.  (ECF No. 59-2 ¶¶ 4, 5, 19, 24, and 31.)  Turner has thus failed to adequately bring those facts into dispute, and they are also deemed undisputed.  *See Elvis Presley Enter. v. City of Memphis, Tenn.*, No. 2:18-cv-2718-SHM-atc, 2020 WL 6163564, at *3 (W.D. Tenn. Oct. 21, 2020) (explaining that, when responding to a properly supported summary judgment motion, "[t]he non-moving party has the duty to point out specific evidence sufficient to justify a jury decision in its favor") (citing Fed. R. Civ. P. 56(c)(1); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)); *see also Jones v. Mayble*, 2:18-cv-02875-TLP-tmp, 2021 WL 1951171, at *2 (W.D. Tenn. May 14, 2021) (quoting *Garrett v. Mich. Dep't of Corr.*, No. 3:18-cv-12844, 2020 WL 5223800, at *5 (E.D. Mich. July 13, 2020)) ("[W]hen opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and . . . a party's status as a pro se litigant does not alter this duty on a summary judgment motion.").

As a result, the eleven Defendant's Facts that Turner contests are undisputed for purposes of ruling on the Motion for Summary Judgment.  Some of the additional facts supplied by Turner

are undisputed as well, as discussed below.  Given the foregoing, the Court finds the following

facts are undisputed for purposes of the Motion:

The National Association of Letter Carriers ("NALC") is a labor union that serves as the

collective bargaining representative of city letter carriers employed by the United States Postal

Service ("USPS").  (ECF No. 59 ¶ 1.)  The Branch is a local union affiliated with NALC that

represents letter carriers employed in postal facilities in Memphis, Tennessee.  (*Id.*)  At all times

material to this case, NALC and USPS have been parties to a collective bargaining agreement

("CBA") governing the terms and conditions of employment of city letter carriers.  (*Id.* ¶ 2.)  The

CBA requires USPS to make every effort to assign workers injured on the job with "limited

duty," sometimes known as "light duty," work that is consistent with the employee's medically

defined work limitations.  (ECF No. 54 ¶ 4.)[4]

Turner is a city letter carrier, employed by USPS since June 21, 1986, who suffered an

injury while on the job.  (ECF No. 59 ¶ 3; ECF No. 61, at 7.)  As a result, he has medical

---

[4] The Branch supports this fact by citing to Article 13 of the CBA.  (*Id.*)  Turner attempts to
dispute this fact first by claiming that Article 13 does not apply to employees who were injured
in the line of duty.  (ECF No. 59-2, at 1.)  Though Turner cites his Exhibit 4-7 in support of his
contention (ECF No. 59-6, at 7), that document (a reproduction of Article 13) does not limit
Article 13's application to off-the-job injuries.  Indeed, it expressly states that "[a]n employee
who has suffered a compensable illness or injury may seek permanent light duty work through
the procedures provided in Article 13."  (*Id.*)  Turner also argues that Article 13 does not apply to
requests for limited duty (ECF No. 59-2, at 1), again citing Exhibit 4-7, but again that document
expressly provides that "Article 13, Section 4.H applies to both light and limited duty situations."
(ECF No. 59-6, at 7.)  Turner next states that the Branch is "looking the other way" and
committing direct and indirect discrimination (ECF No. 59-2, at 1)—these conclusory statements
are legal arguments insufficient to bring a fact into dispute.  *See, e.g.*, *Bridgeport Music, Inc. v.
WB Music Corp.*, No. 3:01-0763, 2006 WL 903737, at *2 n.3 (M.D. Tenn. Apr. 6, 2006)
(adopting report and recommendation) ("Response to statement of undisputed facts are not the
place for legal argument.").  Finally, Turner states that he never asked the Branch to challenge
his medical restrictions or USPS's placing him on nonduty status (ECF No. 59-2, at 1), a fact that
is irrelevant, does not bring the Branch's fact into dispute, and in any event is contested by the
Branch (ECF No. 61, at 2).  Turner has thus failed to bring this fact into dispute, and it is deemed
undisputed.

restrictions at work, *e.g.*, how many hours he can work, how much he can lift, and how often he can bend or stoop. (ECF No. 59 ¶ 3.) The Branch has filed approximately fifty grievances on Turner's behalf, some of which have challenged USPS's failure to offer him work consistent with his medical restrictions. (*Id.* ¶ 5.)[5]

Article 15 of the CBA contains a grievance-arbitration procedure that allows an employee, or the union on the employee's behalf, to grieve an alleged violation of the CBA by USPS. (ECF No. 59 ¶ 6.) The first steps of the grievance procedure are Informal Step A and Formal Step A. (*Id.*) If the union and USPS management do not resolve the grievance at these first two steps, the union may appeal the grievance to Step B. (*Id.*) At Step B, a two-person dispute resolution team composed of a union representative and a management representative has the authority to resolve the grievance. (*Id.* ¶ 7.) If the Step B team reaches an impasse by failing to agree on a resolution, NALC may appeal the grievance to arbitration. (*Id.*) If the Step B team agrees on a resolution, the decision is final. (*Id.*)

In July 2014, USPS offered Turner a limited duty job assignment. (*Id.* ¶ 8.)[6] Turner refused to sign the offer letter and asked the Branch to initiate a grievance on his behalf. (ECF No. 54 ¶ 8.)[7] On August 1, 2014, the Branch filed grievance C-818-14-T, asserting USPS had

---

[5] Turner attempts to dispute this fact by stating that he did not request reasonable accommodations until 2014. (ECF No. 59-2, at 1.) That statement is irrelevant and thus insufficient to bring the fact into dispute, and it is deemed undisputed.

[6] The Branch improperly combined multiple facts into one paragraph in Defendant's Facts No. 8 (ECF No. 54 ¶ 8) and elsewhere in its statement of undisputed facts. *See* LR 56(a) ("Each fact shall be set forth in a separate, numbered paragraph."). Thus, though Turner disputes Defendant's Facts No. 8, it is not clear which portions he disputes. In any event, Turner offers nothing to bring this specific fact into dispute (ECF No. 59-2, at 1–2), and it is thus deemed undisputed.

[7] Turner states that he did not say that he refused to sign the offer letter, citing his Exhibit 5-1 in support of that contention. (ECF No. 59-2, at 2.) Exhibit 5-1, however, appears to be a statement of Charissa Dotson describing a later meeting that took place on January 28, 2015, and

failed to provide Turner with work consistent with his medically defined work limitations.  (ECF No. 54 ¶ 8.)[8]  On September 18, 2014, the Step B Team resolved the grievance, finding that USPS had not violated the CBA in connection with the job offer.  (ECF No. 54 ¶ 8.)[9]

In November 2014, the Office of Workers' Compensation Programs ("OWCP") advised Turner that his wage loss benefits had been terminated effective November 14, 2014, because he had refused suitable work.  (ECF No. 59 ¶ 9.)  On November 26, 2014, Turner accepted under protest a limited job offer that required him to deliver his assigned route without modification to street deliveries.  (ECF No. 61, at 5.)  The Union instructs injured carriers who have doubts about a job offer to accept the offer under protest.  (*Id.*)  Turner's route had 625 residential and business deliveries of segmented areas.  (*Id.*)  The offer required Turner to work above the

---

thus it is irrelevant to bring this fact into dispute.  (ECF No. 59-7.)  The fact is deemed undisputed.

[8] Turner does not dispute that the Branch filed this grievance but states that the Branch only submitted what it wanted to submit, instead of what he requested.  (ECF No. 59-2, at 1.)  That additional information does not bring this fact into dispute and is unsupported by record citation, and thus the fact is deemed undisputed.

[9] Turner attempts to dispute this fact by stating first that "[t]his was crafted to show that a grievance was resolved, but arbitrarily discriminating on the undisputed facts."  (ECF No. 59-2, at 1–2.)  This statement is unsupported by citation to the record and thus insufficient to bring the fact into dispute.  Turner next states that, under the Americans with Disabilities Act, he had a right to request additional medical issues, to ask for reasonable accommodation, and to have a supervisor or manager engage in interactive discussions with him.  (*Id.* at 2.)  The Branch does not dispute that such a right exists but disputes that the ADA applies to USPS.  (ECF No. 61, at 3.)  The availability and applicability of such rights is irrelevant, however—though Turner asserts that he "specifically requested this in my grievances request" and that the Branch disregarded that request, he offers no citation to the record in support.  Finally, Turner states that he requested additional time to complete PS Form 2499, that the Office of Workers' Compensation gives thirty days to complete the form, and that he "was always accommodated by [his] doctor of choice."  (ECF No. 59, at 2.)  The Branch does not dispute these additional facts (ECF No. 61, at 4), but neither party has indicated what relevance these facts have to this dispute.  The additional facts do not bring Defendants' Facts No. 8 into dispute, and thus it is deemed undisputed.

limitations detailed in the medical report provided by Dr. James T. Gaylon. (*Id.*)[10] In presenting

the offer, USPS did not provide Turner with the reverse side of PS Form 2499 (a USPS form

entitled Offer of Modified Assignment (Limited Duty)), rendering that offer incomplete. (ECF

No. 61, at 6.) USPS accepted limited duty accommodations from 1995 through 2014. (*Id.*) On

December 6, 2014, USPS instructed Turner not to return to work. (ECF No. 54 ¶ 10.)[11] That

event was the second time USPS had placed Turner on non-duty, non-pay status without official

notification or just or reasonable cause. (ECF No. 61, at 6.) However, Turner is still employed

by USPS. (*Id.* ¶ 10.)[12]

---

[10] Turner also asserts that the Branch "look[ed] the other way" and did not protest for reasonable
accommodations on his behalf. (ECF No. 59-2, at 2.) In support, he cites his Exhibit 5-6, which
appears to be a publication describing limited-duty job offers and does not support Turner's
factual assertion. (ECF No. 59-7, at 6.) Turner further asserts that no letter carrier who is not
injured could perform the tasks of the offered job with his restrictions. (ECF No. 59-2, at 2.)
Turner offers no record citation in support of these statements. These unsupported or
inadequately supported statements will not be considered for the purposes of summary judgment.

[11] Turner disputes this fact but offers no countervailing facts or arguments to bring it into
dispute. (ECF No. 59 ¶ 10; ECF No. 59-2, at 2–3.) It is therefore deemed undisputed.

[12] Turner disputes this fact but offers no countervailing facts or arguments to bring it into
dispute. (ECF No. 59 ¶ 10; ECF No. 59-2, at 2–3.) It is therefore deemed undisputed. Turner
also states that he asked to get reasonable accommodations from his doctor of choice, Rommel
Childress, and that the ADA does not provide that he could not submit accommodations from the
doctor of his choice. (ECF No. 59-2, at 2–3.) The Branch does not dispute these facts (ECF No.
61, at 6), but neither party has indicated what relevance these facts have to this dispute. The
additional facts do not bring any material fact into dispute. Finally, Turner states that he asked
the Branch to grieve these facts on his behalf. (ECF No. 59-2, at 3.) In support, Turner cites his
Exhibit 2-2 through 2-18 (ECF No. 59-4, at 2–19). Included in those documents is a letter from
Turner to Walker dated January 1, 2015, requesting a grievance be filed based on many of these
facts. (*Id.* at 2–3.) In response, the Branch disputes that Turner asked it to grieve the November
26, 2014 job offer and incorrectly states that Turner offered no record support for this additional
fact. (ECF No. 61, at 6.) In support of its dispute, the Branch states that Turner asked it to file a
grievance regarding a meeting with USPS on December 3, 2014, citing the Walker Declaration
¶ 12 and its Exhibit E. (*Id.* at 6–7.) Exhibit E is the same letter that appears in Turner's Exhibit
2. (*Compare* ECF No. 55-5 *with* ECF No. 59-4, at 2–3.) It thus appears that the parties dispute
the nature of Turner's request for a grievance in his January 1, 2015 letter, not whether a
grievance was in fact requested. The dispute over the nature of the request is not material,
however, as the parties do not dispute that the Branch in fact filed a grievance asserting that

On December 12, 2014, Turner filed an unfair labor practice charge with the National

Labor Relations Board ("NLRB"), Case No. 15-CB-142729, alleging that the Branch had refused

to process a grievance challenging USPS's failure to provide him with work consistent with his

medical restrictions.  (ECF No. 59 ¶ 11.)  In January 2015, Turner wrote to Walker to advise

that, following the termination of his benefits by OWCP, he had accepted the limited duty job

assignment and that, because he continued to disagree about the appropriateness of the job

assignment, Turner did not perform any work when he accepted the job assignment on

November 26, 2014, and instead requested leave.  (*Id.* ¶ 12.)  Turner also informed Walker that,

on December 3, 2014, he gave USPS additional work restrictions that he had obtained from his

personal physician and that he had worked with USPS to implement these new restrictions until

December 6, 2014, when USPS had instructed Turner not to return to work until further notice.

(*Id.*)  As a result, Turner asked the Branch to file a grievance.  (*Id.*)  The Branch filed grievance

C-1279-14-T, asserting USPS had failed to provide Turner with work consistent with his

medically defined work limitations.  (*Id.* ¶ 13.)

On February 2, 2015, Walker spoke with Turner by telephone and asked the Branch to

file a grievance.  (ECF No. 54 ¶ 14.)[13]  Turner stated that on January 28, 2015, USPS attempted

to get him to sign the job offer.  (ECF No. 54 ¶ 14.)[14]  Turner requested at that meeting that he be

---

USPS failed to provide Turner with work consistent with his medically defined work limitations.
(*See* ECF No. 59 ¶ 13.)

[13] Turner disputes this fact but offers no countervailing facts or arguments to bring it into
dispute.  (ECF No. 59 ¶ 14; ECF No. 59-2, at 3.)  It is therefore deemed undisputed.

[14] *See supra* note 13.  Turner maintains that he did not refuse the job offer, relying on the
statement of Charissa Dotson describing that January 28, 2015 meeting.  (ECF No. 59-2, at 3.)
The Branch disputes that assertion (ECF No. 61, at 8), and Ms. Dotson's statement does not
indicate one way or the other whether Turner refused the job offer (ECF No. 59-7, at 1).  This
fact remains in dispute.

permitted to complete PS Form 2499 with his doctor of choice.  (ECF No. 61, at 8.)[15]  The

Station Manager, Monica Lipford, refused to give Turner a complete copy of PS Form 2499.

(ECF No. 61, at 8.)  She noted on the form that Turner had refused to sign it, and two witnesses

confirmed that he refused to sign.  (*Id.*)  Walker told Turner that the grievance that had

previously been filed (C-1279-14-T) would cover the January 28, 2015 incident.  (*Id.*)[16]  USPS

and the Branch knew that Turner would request accommodation regarding the job offer.  (ECF

No. 61, at 7.)  Turner requested a duty of fair representation.  (*Id.*)[17]  Walker sent Turner a letter

memorializing their conversation.  (ECF No. 54 ¶ 14.)[18]

On March 13, 2015, the Step B Team resolved grievance C-1279-14-T, finding that

USPS had violated the CBA in connection with the job offer.  (ECF No. 59 ¶ 15.)  The Step B

Team directed USPS to offer Turner a limited duty job assignment that reflected the 25-pound

restriction for pushing, pulling, and lifting, and to make Turner whole for the period of

November 26, 2014, through January 15, 2015.  (*Id.*)  USPS subsequently offered Turner a new

limited duty job, but he did not accept it.  (*Id.*)

---

[15] Turner maintains that a grievance should have been filed "for escorting me out of the building
without a statement of Just Cause of Action, or a Reasonable Cause of Action."  (ECF No. 59-2,
at 3.)  The Branch disputes that assertion (ECF No. 61, at 8), and in any event, the statement is a
legal conclusion, not relevant to establishing the undisputed facts.

[16] *See supra* note 13.  Turner argues that "saying that last year['s] grievance[] will cover USPS
placing me on involuntary leave without pay is deceptive leading and false representation of the
Union."  (ECF No. 59-2, at 3.)  That legal conclusion does not bring this fact into dispute, and in
any event, it does not appear that Turner disputes that Walker made the statement to him.

[17] Turner offers the additional statement that he has been "falsely accused of Refusal of Job
Offer."  (ECF No. 59-2, at 3.)  The Branch does not dispute that Turner was so accused but
disputes that the accusation was false.  (ECF No. 61, at 7.)  Whether or not the accusation was
false is a legal conclusion and thus irrelevant to establishing the undisputed facts.

[18] *See supra note* 13.

On March 31, 2015, the NLRB dismissed Case No. 15-CB-142729, stating that its investigation did not disclose any evidence that the Branch discriminated against Turner on any basis. (*Id.* ¶ 16.)  In June 2015, Turner sent Walker a letter advising that USPS had failed to make him whole as required by the Step B decision in grievance C-1279-14-T.  (*Id.* ¶ 17; ECF No. 61, at 9.)  The Branch filed a non-compliance grievance, C-492-15-S, seeking to have Turner made whole as required by the Step B decision in C-1279-14-T.  (ECF No. 59 ¶ 18.)  On June 12, 2015, Walker sent Turner a letter advising him that the non-compliance grievance had been filed.  (*Id.*)  On July 1, 2015, the Branch and USPS resolved grievance C-492-15-S at the Formal Step A with USPS agreeing that, once Turner filled out and submitted Postal Service Forms 8038 and 8039, it would pay him.  (ECF No. 54 ¶ 19.)[19]  Turner did not fill out the forms and does not know if he was ever paid.  (ECF No. 54 ¶ 19.)[20]

On August 21, 2017, Turner filed another unfair labor practice charge with the NLRB, Case No. 15-CB-204714, alleging the Branch had refused to process a grievance on his behalf.  (ECF No. 59 ¶ 20.)  On September 18, 2017, the NLRB advised that Turner had withdrawn the

---

[19] Turner disputes this fact but offers no countervailing facts or arguments to bring it into dispute.  (ECF No. 59 ¶ 19; ECF No. 59-2, at 4.)  It is therefore deemed undisputed.

[20] Turner provides the following additional facts, which the Branch does not dispute:

> I contacted the Branch of my concerns of the 8038, 8039 pq.6-7.6-17 on June 17, 2015, p.6-1.  The Dispute Resolution Team said Back Pay of 72 hours-p.6-3.  I received a letter from Mr. Walker stating Back Pay is 80 hours.p.6-2.  The forms 8038,8039 when I received and completed the forms, I only received partial hours, because once signing the forms back in the 90's.  I didn't received full Back Pay it required you to find work to mitigated loss hours.p.6-18.  I included copies of the forms 2240 showing that for a just 2 pay periods for 72 hours, should have been process on these forms 2240, how can USPS submit any form 2240 without my signature on its p.546-5.

(ECF No. 61, at 9 (emphasis removed).)

10

charge.  (ECF No. 54 ¶ 20.)[21]  On October 10, 2017, Turner filed a third unfair labor practice

charge with the NLRB, Case No. 15-CB-207785, alleging that the Branch had refused to process

a grievance on his behalf.  (ECF No. 59 ¶ 21.)  On January 26, 2018, the NLRB advised that it

had dismissed Case No. 15-CB-207785.  (*Id.*)

      In August 2019, Turner sent Walker a letter requesting that the Branch set up a meeting

between him and the USPS Memphis Postmaster.  (*Id.* ¶ 22.)  By letter dated August 28, 2019,

Walker advised Turner that he should request the meeting, that the Branch would be happy to

assist and advise him during the meeting, and that once a meeting date had been set, Turner

should let Walker know so that he could arrange for a Branch representative to be there.  (*Id.*)

Turner never advised Walker that a meeting date was set; as far as Walker is aware, a meeting

was never set.  (*Id.*)  On September 4, 2019, Walker spoke with Turner by telephone regarding

Turner's concerns about signing a job offer USPS had offered him several weeks earlier, and

Walker asked Turner to bring in his current medical restrictions so they could discuss any

concerns Turner had with the job offer.  (ECF No. 54 ¶ 23.)[22]  Walker explained that he could

not obtain the medical restrictions directly from USPS or from Turner's physician because of

privacy restrictions; however, Turner refused to provide his current medical restrictions.  (ECF

No. 54 ¶ 23.)[23]  On September 9, 2019, Walker sent Turner a letter memorializing their

September 4, 2019 conversation, reiterating his request that Turner bring him his current medical

---

[21] Turner neither agrees to nor disputes this fact, and it is thus deemed undisputed.  (*See* ECF No.
59 ¶ 20.)

[22] Turner disputes this fact but offers no countervailing facts or arguments to bring it into
dispute.  (ECF No. 59 ¶ 23; ECF No. 59-2, at 4.)  It is therefore deemed undisputed.  Turner
offers a series of additional facts with no supporting citation to the record, and thus those facts
will not be considered herein.  (ECF No. 59-2, at 4.)  Finally, Turner asserts that the Branch has
no rights over the OWCP, which the Branch does not dispute.  (ECF No. 61, at 10.)

[23] *See supra* note 22.

restrictions, and explained that the Branch needed to review those restrictions to help him.  (ECF No. 54 ¶ 24.)[24]

On December 16, 2019, Turner filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and on January 13, 2020, Turner filed this action, alleging claims against the Branch for disability discrimination, in violation of the Americans with Disabilities Act of 1990 ("ADA"), and sex discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  (ECF No. 1.)  On May 11, 2020, Turner called Walker and asked to meet.  (ECF No. 59 ¶ 26.)  Walker told Turner that he was available to meet immediately, but Turner declined.  (*Id.*)  Walker offered to meet on May 13, 2020, and Turner agreed.  (*Id.*)  Ten minutes later, Turner called Walker back and cancelled that meeting, stating that he needed to speak to others first.  (*Id.*)  Turner did not contact Walker again.  (*Id.*)

---

[24] Turner disputes this fact but offers no countervailing facts or arguments to bring it into dispute.  (ECF No. 59 ¶ 24; ECF No. 59-2, at 4.)  It is therefore deemed undisputed.  Turner offers the additional facts that the Branch is "only playing one Doctor against Other Doctor" and has not acted on his behalf in the past seven years, but he provides no supporting citation to the record, and thus those facts will not be considered herein.  (ECF No. 59-2, at 4.)  Turner also asserts that the Branch has not said anything, written to him, or scheduled arbitration and has instead "stayed asleep," relying on his Exhibit 8.  (*Id.*)  Exhibit 8, however, does not support those statements (ECF No. 59-10), and thus they will not be considered herein.  Turner next asserts that the Branch "knows my doctor of choice cannot be used to offer me a limited Duty Job, Knowing I am under OWCP 8106 Termination, and my claim is closed," relying on his Exhibit 5.  (ECF No. 59-2, at 4 (emphasis removed).)  Exhibit 5, however, does not support those statements (ECF No. 59-7), and thus they will not be considered herein.  Finally, Turner states that he has received no official decision from USPS ending his leave and that the Branch knows that all limited duty job offers must be approved by OWCP, but he provides no supporting citation to the record, and thus those statements will not be considered herein.  (ECF No. 59-2, at 4.)

To date, the Branch has not received a copy of Turner's current medical restrictions. (*Id.* ¶ 27.)[25] An OWCP Form 5 indicates that Turner has reached maximum medical improvement. (ECF No. 61, at 11.) Walker, who has been a Branch officer since 2004, is not aware of any other city letter carrier besides Turner who has sought the Branch's assistance with respect to their medical restrictions, while simultaneously refusing to provide the Branch with evidence of the medical restrictions at issue. (*Id.*)[26]

Turner claims that the Branch helped two female letter carriers who suffered on-the-job injuries, Felicia Scales and Irma Johnson, but that the Branch did not help him. (ECF No. 59 ¶ 28.) The Branch filed grievances for both Scales and Johnson after USPS delayed in issuing them limited duty job offers. (ECF No. 54 ¶ 29.)[27] USPS then issued Scales and Johnson limited duty job offers, and they accepted them. (ECF No. 54 ¶ 29.)[28] The Branch has not done anything more for Scales or Johnson than it has done for Turner. (ECF No. 54 ¶ 29.) To the best of Walker's knowledge, Turner has not accepted the job that USPS offered him in August 2019, or any subsequent job offers. (*Id.*) Those job offers, however, do not reflect the OWCP's findings as to Turner's duty status. (ECF No. 61, at 12.)[29]

---

[25] Turner disputes this fact, stating that the Branch already has a copy of his medical restrictions from his second opinion doctor, the Branch knows his injury is permanent, and he has no updated medical records to submit. (ECF No. 59-2, at 6.) The Branch disputes these facts (ECF No. 61, at 11), and in any event, they are unsupported by record citation and will not be considered.

[26] Turner disputes this fact but offers no countervailing facts or arguments to bring it into dispute. (ECF No. 59 ¶ 27; ECF No. 59-2, at 6.) It is therefore deemed undisputed.

[27] Turner disputes this fact but offers no countervailing facts or arguments to bring it into dispute. (ECF No. 59 ¶ 29; ECF No. 59-2, at 6.) It is therefore deemed undisputed.

[28] *See supra* note 27.

[29] Turner provides additional facts with no supporting citation to the record, and thus those facts will not be considered. (ECF No. 59-2, at 6.)

Turner claims that the Branch discriminated against him because of his disability and sex through unequal terms and conditions of employment, by failing to accommodate his disabilities, and by breaching its duty of fair representation. (ECF No. 59 ¶ 30; ECF No. 1, at 3.) Turner's alleged disabilities are his on-the-job injury, major depression, and severe anxiety. (ECF No. 54 ¶ 31; ECF No. 61, at 12.) Turner has no documents supporting his allegation that the Branch discriminated against him because of his disability or sex, and Turner has no documents concerning his claim that the Branch failed to accommodate his alleged disabilities. (ECF No. 59 ¶ 32.) Turner does not know of any male letter carriers, besides himself, who suffered on-the-job injuries. (*Id.* ¶ 33.) Turner does not know of any letter carriers, other than Scales, Johnson, and himself, who suffered on-the-job injuries. (*Id.*)

Turner's only "evidence" that the Branch discriminated against him based on his alleged disability is that Scales and Johnson, who both suffered on-the-job injuries, are still at work, and he is not. (*Id.* ¶ 34.) Turner does not know the nature of Scales's and Johnson's on-the-job injuries or if they have disabilities. (*Id.*) Turner does not know what the Branch did to help Scales or Johnson, or whether it filed any grievances for them. (*Id.*) Turner's only "evidence" that the Branch discriminated against him based on his sex (male) is that Scales and Johnson, who are both female, are still at work, and he is not. (*Id.* ¶ 35.)

## PROPOSED CONCLUSIONS OF LAW

### I.    Legal Standard for Summary Judgment

Courts evaluate motions for summary judgment under Federal Rule of Civil Procedure 56(a). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Harper v. City of Cleveland*, 781 F. App'x 389, 392 (6th Cir. 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Thus, summary

judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a); *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017) ("Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.") (quoting *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 526 (6th Cir. 2014)). "A material fact is one 'that might affect the outcome of the suit,' and a genuine dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party bears the burden of showing that no genuine issues of material fact exist." *McClellan v. Midwest Machining, Inc.*, 900 F.3d 297, 302 (6th Cir. 2018) (citing *Celotex*, 477 U.S. at 324).

In evaluating summary judgment motions, a court must "draw all reasonable inferences in favor of the nonmoving party." *Harper*, 781 F. App'x at 392 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Nevertheless, "[t]he nonmoving party must do more than simply 'show that there is some metaphysical doubt as to the material facts.'" *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 652 (W.D. Tenn. 2020) (quoting *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018)). A properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation, or unsubstantiated assertions. *Bradley v. Wal-Mart Stores E., LP*, 587 F. App'x 863, 866 (6th Cir. 2014) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). "Just because Plaintiff is pro se does not alter his obligations under Rule 56. Rather, 'liberal treatment of pro se pleadings

15

does not require lenient treatment of substantive law.'" *Jones*, 2021 WL 1951171, at *2 (quoting *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006)).

"Although summary judgment must be used carefully, it 'is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut.'" *Stevens-Bratton*, 437 F. Supp. 3d at 652 (quoting *FDIC v. Jeff Miller Stables*, 573 F.3d 289, 294 (6th Cir. 2009)). Ultimately, "[w]hen the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law, and summary judgment is proper." *Peterson v. Medtronic, Inc.*, No. 2:17-cv-02457-MSN-atc, 2020 WL 6999225, at *4 (W.D. Tenn. Sept. 30, 2020) (quoting *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013)).

## II.    The Timeliness of Plaintiff's Claims

As an initial matter, the Court will address the timeliness of Turner's claims and the time periods at issue in this case. For his ADA claims, Turner was required to file his EEOC Charge of Discrimination within 300 days of the alleged disability discrimination. *See Booth v. Nissan N.A., Inc.*, 927 F.3d 387, 392 (6th Cir. 2019) (citations omitted). Similarly, Title VII requires that "a party must file a charge within either 180 or 300 days of the date that a discrete retaliatory or discriminatory act 'occurred' or lose the ability to recover for it." *Blackburn v. Shelby County*, 770 F. Supp. 2d 896, 916 (W.D. Tenn. 2011) (quoting *Morgan*, 536 U.S. at 113). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). As a result, "only those acts that

16

occurred 300 days before [the charge filing date] are actionable." *Id.* "If the employee fails to file an EEOC complaint related to that action within the allowed statutory period, a defendant employer is entitled to treat a past act as lawful." *Id.* (citing *United Air Lines v. Evans*, 431 U.S. 553, 558 (1977)).

The gravamen of Turner's claims is that the Branch has not protected his job with USPS and failed to obtain a new position for him since he was instructed not to return to work on December 6, 2014. (ECF No. 1, at 4.) Turner filed his EEOC charge of discrimination on December 16, 2019. (ECF No. 1, at 5.) Only those discrete acts of alleged disability discrimination that "occurred sometime within 300 days of" December 16, 2019—or on or after February 19, 2019—can therefore be considered as support for his claims. *Booth*, 927 F.3d at 392.

The only events relevant to this case that took place after February 19, 2019, occurred in August and September 2019:

- Turner sent Walker a letter in August 2019 requesting a meeting with the Memphis Postmaster;

- Walker responded by letter dated August 28, 2019, that Turner should request the meeting with the Postmaster and that the Branch would represent him at the meeting;

- On September 4, 2019, Walker and Turner discussed USPS's recent job offers, and Walker requested Turner's current medical restrictions;

- On September 9, 2019, Walker sent Turner a letter memorializing the September 4th telephone call and reiterating the request for his updated medical restrictions; and

- Walker and Turner spoke on May 11, 2020, when Turner requested a meeting, Walker offered to meet either that day or on May 13, 2020, and Turner agreed to meet but canceled the meeting ten minutes later.

All earlier events are time barred, including Turner's December 2014 dismissal from USPS and the Branch's efforts in 2015 to effectuate his return to work.

17

In his Response to the Motion for Summary Judgment, Turner invokes the doctrine of equitable tolling in an effort to avoid the impact of his delayed filing of the EEOC Charge. (ECF No. 59-1, at 8.) Equitable tolling is "sparingly bestowed" and requires extraordinary circumstances, such as "where the defendant has lulled the plaintiff into inaction." *Jones v. Natural Essentials, Inc.*, 740 F. App'x 489, 493 (6th Cir. 2018). Factors to consider when determining the appropriateness of equitable tolling include "(1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Id.* at 494 (quoting *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)).

Here, Turner has failed to establish that any of these factors might lean in his favor. He does not argue that he lacked notice or was unaware of the filing deadline. He also does not argue absence of prejudice to the Branch, and prejudice is indeed likely in this case, where so much time has passed since the incidents he complains of, going back to 2014. In terms of diligence, he argues that he has "pursued the proper communications" with the Branch and "timely contacted" the Branch (ECF No. 59-1, at 8), but he fails to explain the gaps in his pursuit of his claims—for example, his lack of activity between the resolution of his grievance in July 2015 and his filing of an NLRB charge in August of 2017, and between the dismissal of his second NLRB charge in January of 2018 and the letter he sent to the Branch in August of 2019. The diligence factor is thus neutral at best. Finally, Turner argues that the Branch engaged in delay tactics by "[f]iling grievances that will not change any or all disputes." (*Id.*) He does not explain, however, how the Branch delayed his filing of this action by taking the exact actions he requested—filing grievances on his behalf. Turner thus has not established that he acted

reasonably in waiting to file his EEOC charge.  All of these factors are neutral or weigh against

Turner, and thus he may not invoke equitable tolling.  He may only support his claims with

events taking place on or after February 19, 2019.

## III.   Legal Standard for ADA Claims

"The ADA prohibits discrimination by a covered entity 'against a qualified individual

with a disability because of the disability of such individual in regard to job application

procedures, the hiring, advancement, or discharge of employees, employee compensation job

training, and other terms, conditions, and privileges of employment.'"  *Daugherty v. Sajar*

*Plastics, Inc.*, 544 F.3d 696, 702–03 (6th Cir. 2008) (quoting 42 U.S.C. § 12112(a)).  Because

labor unions are "covered entities" under the ADA, union members can bring claims against

labor unions under Title I of the ADA.  42 U.S.C. § 12111(2).

"To recover on a claim for disability discrimination under the ADA, a plaintiff must

show that he: (1) is disabled; (2) is otherwise qualified to perform the essential functions of the

position, with or without accommodation; and (3) has suffered an adverse employment action

because of his disability."  *Douglas v. Esper*, No. 2:18-cv-02420-SHM-dkv, 2020 WL 206936, at

*3 (W.D. Tenn. Jan. 14, 2020) (citing *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir.

2016)).  A plaintiff must show that the adverse employment action took place "because of, or

'but-for,' their actual or perceived physical or mental impairment."  *Babb v. Maryville*

*Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir. 2019) (quoting *Lewis v. Humboldt*

*Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012)).  Proving this but-for causal connection

can be accomplished through direct evidence of discriminatory motive or through

"circumstantial evidence of discrimination under the well-trod *McDonnell Douglas* burden-

shifting framework."  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

"Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). "[C]ircumstantial evidence does not 'on its face establish discriminatory animus,' but discrimination may be reasonably inferred." *Golden v. Mirabile Inv. Corp.*, 724 F. App'x 441, 446 (6th Cir. 2018) (quoting *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012)). Under the three-step *McDonnell Douglas* process for circumstantial evidence, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Jenkins v. Plumbers & Pipefitters Union Loc. No. 614*, 971 F. Supp. 2d 737, 744 (W.D. Tenn. 2013) (citing *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004)). If the plaintiff successfully makes out a prima facie case, a presumption of unlawful discrimination arises against the Title I covered entity, who then bears the burden of articulating "some legitimate, non-discriminatory reason" for the employment-related action. *Id.* (quoting *DiCarlo*, 358 F.3d at 414). "Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *DiCarlo*, 358 F.3d at 414–15). "At the motion for summary judgment stage, 'a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry.'" *Id.* (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)).

## IV.    Legal Standard for Title VII Claims

Title VII provides, in pertinent part, that "[i]t shall be an unlawful employment practice for a labor organization . . . to discriminate against[] any individual because of his race, color,

religion, sex, or national origin . . . or . . . to cause or attempt to cause an employer to discriminate against an individual in violation of this section." 42 U.S.C. § 2000e-2(c). As in the ADA context, a Title VII plaintiff may establish a case of unlawful discrimination through direct evidence or through circumstantial evidence using the *McDonnell Douglas* burden-shifting framework. *Craig v. Tenn. Dep't of Child.'s Servs.*, No. 2:17-cv-02522-SHM-cgc, 2019 WL 5092401, at *4 (W.D. Tenn. Aug. 6, 2019), *report and recommendation adopted*, 2019 WL 4093773 (W.D. Tenn. Aug. 29, 2019) (citing *Ondricko,* 689 F.3d at 649).

    To establish a prima facie case of sex discrimination, a plaintiff must demonstrate that (1) he is a member of a protected group; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) either similarly situated, non-protected employees were treated more favorably or he was replaced by someone outside of his protected class. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 393 (6th Cir. 2010). Furthermore, a reverse discrimination claim carries a different and more difficult prima facie burden than an ordinary sex discrimination claim. *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006). To establish a claim of reverse sex discrimination, a plaintiff is required to also show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority" and "that the employer treated differently employees who were similarly situated but not members of the protected group." *Id.* (citing *Yeager v. Gen. Motors Corp.*, 265 F.3d 389, 397 (6th Cir. 2001)). *But see Johnson v. Riviana Foods, Inc.*, No. 14-cv-2911-SHL-cgc, 2017 WL 5653952, at *6 (W.D. Tenn. Jan. 31, 2017) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 n.7 (6th Cir. 1994)) (recognizing that some courts have expressed "serious misgivings about the soundness of a test which imposes a more onerous standard for plaintiffs who are . . . male than for their . . . female counterparts").

## V.    The Claims of Unequal Terms and Conditions of Employment

Turner asserts claims against the Branch under both the ADA and Title VII for unequal

terms and conditions of employment.  (ECF No. 1, at 3.)  He has failed to make out a prima facie

case for either claim.

First, Turner has failed to establish that he suffered an adverse employment action by the

Branch.  Turner's primary complaint appears to be that the Branch has not filed another

grievance on his behalf regarding the 2019 job offered to him by USPS.  The record does not

establish, however, that the Branch has refused to file such a grievance—instead, it is undisputed

that Walker spoke with Turner and offered to continue to speak with Turner about the job offer,

but that Turner refused.  In addition, the Branch asked Turner to provide updated medical

restrictions, and Turner again declined.  These facts do not establish that the Branch has failed to

file a grievance on Turner's behalf.

Even if Turner had established an adverse employment action, the Branch has met its

burden of identifying a non-discriminatory reason for not filing the new grievance—Turner's

refusal to provide evidence of his medical restrictions, which the Branch contends is necessary to

assist him.  (ECF No. 53, at 22.)  The Branch's burden here "is merely a burden of production,

not of persuasion, and it does not involve a credibility assessment."  *Upshaw v. Ford Motor Co.*,

576 F.3d 576, 585–86 (6th Cir. 2009).  "[T]he employer's burden is satisfied if he simply

'explains what he has done' or 'produces evidence of legitimate nondiscriminatory reasons.'"

*Id.* (quoting *Bd. of Trustees of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n.2 (1978)).

The burden thus shifts back to Turner to show that this reason is merely pretextual, which

he can do by demonstrating "(1) that the proffered reasons had no basis in fact, (2) that the

proffered reasons did not actually motivate the employer's action, or (3) that they were

insufficient to motivate the employer's action."  *Lawroski v. Nationwide Mut. Ins. Co.*, 570 F.

App'x 589, 594 (6th Cir. 2014) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). Though Turner asserts that an OWCP form indicates that he has reached maximum medical improvement, implying that the Branch has all the medical information it needs to file a grievance, Turner refused to even meet with Walker to discuss the status of his medical restrictions or provide updated reports. Again, it is Turner's refusal to comply with the Branch's basic requests for information, rather than any discriminatory intent, that has thus far precluded the filing of another grievance. Turner has offered no evidence of pretext sufficient to lead a jury to reject the Branch's explanation for its failure to file a grievance based on the 2019 job offer.

Second, as to his ADA claim, Turner has also failed to produce any evidence that might show alleged discrimination "because of his disability." *Wade v. Gen. Motors Corp.*, 1997 WL 1764766, at *8 (S.D. Ohio Mar. 17, 1997) *aff'd*, 165 F.3d 29 (6th Cir. 1998) (holding that, even if a union refused to file grievances for the plaintiff, that alone would not "allow a reasonable jury to infer that such refusals were the result of unlawful discrimination on the basis of Plaintiff's disability"). The record is devoid of evidence establishing the requisite but-for causal connection required of an ADA claim.

Third, as to his Title VII claim, Turner has also failed to demonstrate that he is similarly situated to non-protected employees who were treated more favorably. Turner points to Scales and Johnson, two women whom the Branch filed grievances on behalf of and who were issued limited duty job offers that they accepted. To establish he was similarly situated to Scales and Johnson, Turner must demonstrate, for example, that they "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the [defendant's] treatment of them for it." *Tucker v. Potter*, No. 1:06-cv-2359, 2009 WL 1954773, at *18 (N.D. Ohio July 6, 2009) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.

1992)).[30]  Though this review is "light," and the similarity requirement should not be applied

narrowly, "a general weighing of the qualifications of [the comparators] is necessary at the prima

facie stage."  *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813–14 (6th Cir. 2011) (citing

*Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981)); *see also Jackson v.*

*FedEx Corp. Servs., Inc.*, 518 F.3d 388, 396 (6th Cir. 2008) (finding it inappropriate to "place[] a

burden of producing a significant amount of evidence in order to establish a *prima facie* case,"

which is "better suited for the pretext stage that occurs later").

Here, Turner admits that he does not know the nature of Scales's and Johnson's on-the-

job injuries or if they have disabilities, and he does not know what the Branch did to help Scales

or Johnson.  He relies solely on the fact that Scales and Johnson, who are both women and who

both suffered on-the-job injuries, are still at work, and he is not.  He offers no evidence regarding

their job duties, their injuries, the nature of the grievances filed on their behalf, whether they

provided the Branch with sufficient information to file their grievances, or the nature of the

limited duty jobs they were offered.  Even under the light review applicable at the prima facie

stage, Turner has failed to demonstrate he is similarly situated to Scales or Johnson.

There is no genuine dispute as to any material fact, and the Branch is entitled to summary

judgment on the claims of unequal treatment.

## VI.    The Claim for Failure to Accommodate

Turner asserts a claim against the Branch under the ADA for failing to accommodate his

disabilities.  (ECF No. 1, at 3.)  "Because 'not making reasonable accommodations' is listed in

---

[30] The *Mitchell* court identified other factors—whether the employees had the same supervisor
and were subject to the same standards—a court may consider, but the Sixth Circuit has clarified
that courts should only consider those factors relevant to a particular case.  *See, e.g.*, *Ercegovich
v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).  The Court finds the
similarity of Turner's conduct to Scales's and Johnson's conduct to be particularly relevant in
this case.

the ADA's definition of disability discrimination, *see* 42 U.S.C. § 12112(b)(5)(A), 'claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 298 (6th Cir. 2019) (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007)). Turner bears the burden of establishing that "(1) []he is disabled within the meaning of the Act; (2) []he is otherwise qualified for the position, with or without reasonable accommodation; (3) [his] employer knew or had reason to know about [his] disability; (4) []he requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595 (6th Cir. 2018) (quoting *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011)).

Turner has made no allegations, much less submitted any direct evidence, that he requested an accommodation from the Branch, that the Branch failed to provide a requested accommodation to Turner, or that his disability was a motivating factor for the Branch's actions. Turner may take issue with the accommodations offered by his employer, USPS, but that case is not before this Court. The Branch is not Turner's employer, and nothing in the record indicates that the Branch failed to provide a reasonable, requested accommodation to him. *See Greiner v. Charter Cnty. of Macomb, Mich.*, No. 14-cv-13979, 2017 WL 3977845, at *10, n.8 (E.D. Mich. Sept. 11, 2017) (noting that the plaintiff "has not presented any evidence that the Union *itself* failed to accommodate his alleged disabilities" and that plaintiff "has not cited any case law suggesting that an employee may bring a failure to accommodate claim against his union based upon his employer's alleged failure to provide accommodations"). As a result, the Branch is entitled to summary judgment on Turner's failure-to-accommodate claim.

25

## VII.    The Breach of Fair Representation Claim

Turner asserts claims against the Branch under both the ADA and Title VII for breaching its duty of fair representation.  (ECF No. 1, at 3.)  Turner alleges the Branch discriminated against him by not adequately and fairly representing him in his dispute with USPS.  To establish a prima facie case under the ADA or Title VII for failing to file a grievance, Turner must show that "(1) [his] employer violated the collective bargaining agreement with respect to Plaintiff; (2) the Local Union permitted the violation to go unrepaired, thereby breaching the Local Union's duty of fair representation; and (3) the Local Union's actions were motivated by discriminatory animus based upon Plaintiff's protected class."  *Allen-Amos v. Ford Motor Co.*, No: 1:19-cv-1012, 2020 WL 4334880, at *8 (S.D. Ohio Jul. 28, 2020), *report and recommendation adopted*, 2020 WL 5250441 (S.D. Ohio Sept. 3, 2020) (citing *Winpye v. IAM*, No. 1:11-cv-845, 2012 WL 1340363, at *3 (S.D. Ohio Apr. 17, 2012)); *see also id.* at *9 (applying the *McDonnell Douglas* burden-shifting framework to a claim for failure to file a grievance).

Turner has failed to produce any evidence to suggest that the Branch permitted violations of the CBA to go unrepaired.  Rather, as discussed above, the undisputed record before the Court reflects that the Branch intervened on multiple occasions to protect Turner's job and to obtain medical accommodations from USPS, including filing and prosecuting multiple grievances and offering to work with Turner to effectuate his return to a position with USPS.

Even if Turner could show that the Branch did not adequately help him or refused to file grievances, he has identified no evidence of discriminatory animus.  And the Branch has articulated a non-discriminatory reason for not filing a new grievance after 2015—Turner has refused to provide the Branch with current evidence of his medical restrictions and has otherwise declined the Branch's offers of help, as recently as May 2020.  Turner has offered no evidence

26

that the reasons given by Defendant for not filing another grievance are a pretext for disability or

sex discrimination.  For these reasons, the Branch is entitled to summary judgment on Turner's

fair representation claim.

## **RECOMMENDATION**

For the foregoing reasons, this Court recommends that Defendant be granted summary

judgment as to all of Plaintiff's claims.

Respectfully submitted this 11th day of February, 2022.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation
disposition, a party may serve and file written objections to the proposed findings and
recommendations.  A party may respond to another party's objections within fourteen (14)
days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within
fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.